# IN THE COURT OF APPEALS OF IOWA

No. 20-0058
Filed March 18, 2020

**IN THE INTEREST OF M.M., L.C., and C.C.,**
**Minor Children,**

**V.S., Mother,**
      Appellant,

**M.M., Father of M.M.,**
      Appellant.
_____

Appeal from the Iowa District Court for Jasper County, Steven J. Holwerda, District Associate Judge.

A mother of three children and the father of one of the children separately appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**

Meegan M. Keller of Keller Law Office P.C., Altoona, for appellant mother.

Larry J. Pettigrew of Pettigrew Law Firm, P.C., Ankeny, for appellant father.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Shane O'Toole of Law Office Shane P. O'Toole, Des Moines, attorney and guardian ad litem for minor children.

Considered by Tabor, P.J., and Mullins and Schumacher, JJ.

**SCHUMACHER, Judge.**

A mother of three children and the father of one of the children separately appeal the termination of their parental rights. We find clear and convincing evidence in the record to support termination of the parents' rights. On the mother's claim, we find termination of her parental rights is in the children's best interests. The father claims the court should have applied an exception to termination, and we find the court properly denied his claim. Accordingly, we affirm the decision of the juvenile court.

## I.      Background Facts & Proceedings

V.S. is the mother of M.O.M., born in 2008; L.D.C., born in 2015; and C.M.C., born in 2017. M.P.M. is the father of M.O.M. D.C. is the father of L.D.C. and C.M.C.[1] M.P.M. was incarcerated throughout the juvenile court proceedings on a charge of second-degree robbery. The children were removed from the mother's care on May 16, 2018, because she was living with R.S., who is a registered sex offender. The children were placed in foster care. Later, M.O.M. was placed in the care of a paternal uncle.

The parties stipulated to a child-in-need-of-assistance (CINA) adjudication for the children under Iowa Code section 232.2(6)(c)(1), (c)(2), (d), (f), and (n) (2018). The juvenile court adopted the parties' stipulation. Limited progress was made in the case because the mother continued to live with R.S. and he did not complete a sex offender treatment program. Furthermore, the mother was inconsistent in attending mental-health treatment and did not have stable housing.

---

[1] D.C. has not appealed the termination of his parental rights.

The mother was also inconsistent in participating in visits. She did not progress beyond supervised visits. M.P.M. had only a few visits and none since February 2019.

On June 24, 2019, the State filed a petition seeking to terminate the parents' rights. The mother continued living with R.S. until his parole was revoked in July and he was taken into custody. The mother began parenting classes in September and restarted mental-health therapy in October.

The termination hearing was held on December 12. The day before the hearing a social worker visited the mother's home where she was living with a new paramour. The social worker determined there were safety concerns, rendering the residence unsafe, even for visits. There was no working electricity in the upstairs of the home, where some bedrooms were located, and parts of the home were under construction.

The court terminated the mother's parental rights under section 232.116(1)(e), (f) (M.O.M. and L.D.C.), and (h) (C.M.C) (2019). M.P.M.'s parental rights to M.O.M. were terminated under section 232.116(1)(b), (e), and (f). The court found termination was in the children's best interests, stating, "It is in the best interest of the children to live in the care of their current placements rather than remain in limbo until their parents can correct their problems, if ever." The court declined to apply any of the exceptions to termination found in section 232.116(3). The mother and M.P.M. appeal the termination of their parental rights.

## II.     Standard of Review

Our review of termination proceedings is de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). "'Clear and convincing evidence' means there are no

serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). Our primary concern is the best interests of the child. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014).

### III. Sufficiency of the Evidence

**A.** The mother claims there is not sufficient evidence to support termination of her parental rights on any of the grounds relied upon by the juvenile court. "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *A.B.*, 815 N.W.2d at 774. We will examine the termination of the mother's rights under section 232.116(1)(f) for M.O.M. and L.D.C. and (h) for C.M.C.

The mother disputes the juvenile court's determination that the children could not be returned to her care as provided in section 232.102 at the present time. *See* Iowa Code § 232.116(1)(f)(4), (h)(4). We consider whether the children could be returned to the parent's care at the time of the termination hearing. *See In re M.W.*, 876 N.W.2d 212, 224 (Iowa 2016).

A social worker examined the mother's home the day before the termination hearing and found it was not suitable for visitation due to safety concerns and the children could not be returned to live in the home. Throughout the case the mother did not have stable housing, as she moved nineteen times within eighteen months. Additionally, the mother had only recently started parenting classes. The mother also started mental-health treatment with a new therapist in October 2019, but she had missed half of her scheduled appointments prior to the termination hearing in

December. The mother continued to live with a registered sex offender until he was sent to jail, although he did not complete a sex offender treatment program. The mother was inconsistent in attending visitation and was never able to progress beyond supervised visits. For all of these reasons, we conclude there is clear and convincing evidence in the record to show the children could not be safely returned to the mother's care. We conclude the mother's parental rights were properly terminated under section 232.116(1)(f) and (h).

**B.** M.P.M. contends there is not sufficient evidence in the record to support termination of his parental rights on the ground of abandonment under section 232.116(1)(b). He concedes, however, there is sufficient evidence to support termination of his parental rights under section 232.116(1)(e) and (f). Because we only need to find one ground to terminate a parent's rights, we do not need to address the father's arguments concerning section 232.116(1)(b), as he acknowledges his rights were properly terminated under section 232.116(1)(e) and (f). *See A.B.*, 815 N.W.2d at 774 (noting that when the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any of the grounds).

**IV. Best Interests**

The mother claims termination of her parental rights was not in the children's best interests. She asserts she is bonded with the children and there were no problems with her parenting skills. "When we consider whether parental rights should be terminated, we 'shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of

the child, and to the physical, mental, and emotional condition and needs of the child.'" *M.W.*, 876 N.W.2d at 224 (quoting Iowa Code § 232.116(2)).

From the time the children were removed in May 2018 until July 2019 the mother lived with a registered sex offender, although social workers explained to her that this was an unsafe environment for the children. The mother did not voluntarily leave R.S. Rather, he was removed from the scene because he was sent to jail for parole violations. The mother consistently placed her relationship with R.S. above the needs of the children. Also, the mother did not start participating in a parenting class until after the petition to terminate her parental rights had been filed. The mother did not demonstrate an ability to parent the children on her own. We find termination of the mother's parental rights is in the children's best interests.

As part of her best-interests argument, the mother states that she has a learning disability and claims that if adequate services had been offered to her, the termination of her parental rights could have been avoided. "The State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent." *In re L.M.*, 904 N.W.2d 835, 839 (Iowa 2017); accord Iowa Code § 232.102(9). "[W]hat constitutes reasonable services varies based upon the requirements of each individual case." *In re C.H.*, 652 N.W.2d 144, 147 (Iowa 2002).

> The juvenile court found:
>
> The mother had a psychological/parenting assessment which placed her in a lower functioning range. [Social Worker Lori] Cronbaugh testified that the Department always handled the mother knowing that she had a comprehension problem and that [Family Safety, Risk, and Permanency Services] also did quite a bit more for her than they

would for higher-functioning parents, noting the mother's deficiencies. They would "go over" things with her several times, they would use more cue cards or visual cues in their teaching, and they would provide her with several reminders of upcoming appointments. Despite the extra efforts and attention, the mother has not been using the parenting skills she has been taught. She cannot put the parenting skills she has learned into practice. She still needs continuing coaching and continuing reminders. She still does not have the ability to parent the children on her own.

We find the services offered to the mother were reasonable under the facts of the case. The evidence shows social workers involved in the case took the mother's learning disability into consideration when providing services to her.

## V.     Exceptions to Termination

M.P.M. contends the court should have decided not to terminate his parental rights based on the factors in section 232.116(3). Under section 232.116(3), "[t]he court need not terminate the relationship between the parent and child" under certain circumstances. Iowa Code § 232.116(3). "The factors weighing against termination in section 232.116(3) are permissive, not mandatory," and the court may use its discretion, "based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship." *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014) (quoting *In re D.S.*, 806 N.W.2d 458, 474–75 (Iowa Ct. App. 2011)).

The court may decide to not terminate a parent's rights if "[a] relative has legal custody of the child." Iowa Code § 232.116(3)(a). M.P.M. points out that M.O.M. is in the care of the paternal uncle and the father asks to have the child placed in a guardianship with the paternal uncle. The juvenile court addressed this issue, stating:

[M.P.M.] requests a guardianship with his brother. The child needs stability and permanency. Given the child's age, the parent's lack of effort and seeming indifference in this case (and before), the child's desire to live with his uncle until he is 18, and the strained relationship between the father and the uncle, a guardianship is not in the child's best interest and will not provide him with the stability and permanency which he needs. The parent did not meet his burden of proof.

We agree with the court's conclusions. We find it would not be in the child's best interests to be placed in a guardianship. By terminating the father's rights, the child can be adopted, which will give the child stability and permanency. *See In re C.K.*, 558 N.W.2d 170, 175 (Iowa 1997) (noting parenting "must be constant, responsible, and reliable").

M.P.M. also states the court could have decided not to terminate his parental rights on the ground "[t]he child is over ten years of age and objects to the termination." *See* Iowa Code § 232.116(3)(b). This issue was not addressed by the juvenile court, and we question whether it was preserved for our review. *See A.B.*, 815 N.W.2d at 773 (stating that error preservation rules apply in termination proceedings). Even if error was preserved, however, M.P.M. has not shown M.O.M. objected to the termination of the father's parental rights. M.O.M. stated that he expected to remain living with his paternal uncle.

We affirm the juvenile court decision terminating the parental rights of the mother and M.P.M.

**AFFIRMED ON BOTH APPEALS.**